**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **TINA CROW,** | ) | **CIVIL ACTION NO.: 5:25-CV-01379** |
| **Plaintiff** | ) | **JUDGE S. MAURICE HICKS, JR.** |
| **VERSUS** | ) | **MAGISTRATE JUDGE MARK L. HORNSBY** |
| **WALMART INC.** | ) | |
| **Defendant** | ) | |

**DECLARATION OF ASHLEY O'BRIEN**
**IN SUPPORT OF DEFENDANT WALMART INC.'S**
**MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**

I, Ashley O'Brien, declare and state as follows:

1. I am a Senior Manager, Onboarding Capabilities for the Spark Driver platform at Defendant Walmart Inc. ("Walmart"). I have worked in my current role since November 2023. Prior to that, I was a Manager, Onboarding Capabilities for the Spark Driver platform at Walmart from August 17, 2022, to November 2023. Prior to that, I was employed by Delivery Drivers, Inc. ("DDI") from December 2020 to August 16, 2022, and served as an Account Manager involved in driver onboarding to the Spark Driver platform.

2. I submit this declaration in support of Walmart's Motion to Compel Arbitration and Stay Litigation, filed concurrently herewith. I have personal knowledge of the facts set forth in this declaration and, if called to testify as a witness, I could and would do so under oath.

3. Walmart is a corporation incorporated in the State of Delaware, with its principal place of business in Bentonville, Arkansas.

4. The Spark Driver platform is an app-based delivery platform that allows independent contractors access to opportunities to deliver grocery and other general merchandise from Walmart's (and other participating local retailers') stores to customers' homes.



EXHIBIT
A

5. In my current role with Walmart, I am responsible for overseeing various aspects of the Spark Driver platform, including overseeing driver acquisition and the onboarding process for drivers. In that capacity, I am familiar with and regularly access Walmart's business records pertaining to the Spark Driver platform and its users.

6. In my current role with Walmart, I am well-acquainted with the process by which individuals are onboarded to use the Spark Driver platform, including the process by which they sign their respective Non-Disclosure and Dispute Resolution Agreements (the "Agreement"). The onboarding process is as follows: individuals interested in signing up to use the Spark Driver platform provided preliminary information to Walmart, including a phone number, which was used to send the prospective contractor a communication to verify her identity. The prospective contractor also had to enter her email address as her unique login.

7. Once logged in to the online Spark Driver platform portal, the prospective contractor is required to provide personal identification information ("PII"), including full legal name, address, phone number, email, date of birth, and driver's license information. The prospective contractor is then presented with an electronic signature disclosure, which requires the prospective contractor to agree to use an electronic signature for purposes of signing onboarding documents and explains that after signing, the prospective contractor will have access to all signed documents using the Spark Driver platform portal. Only after agreeing to the electronic signature disclosure is the prospective contractor able to move forward with the onboarding process. As part of the onboarding process, prospective contractors receive an electronic version of the Agreement. To sign the Agreement, prospective contractors must click on an "I agree" icon at the bottom of the Agreement and select "I accept the terms of this agreement."

8. Subsequently, and with the prospective contractor's express permission, Walmart then pulls a criminal and driving history record check for the prospective contractor, which corroborates the PII provided by the prospective contractor, and therefore, the prospective contractor's identity. Contractors do not receive access to the Spark Driver platform to have the opportunity to provide pickup and delivery services until all the above steps are completed, including the execution of the Agreement and the Terms of Use ("TOU").

9. The Agreement includes arbitration provisions and provides a mechanism for the contractor to opt out of such provisions. Contractors cannot access the Spark Driver platform without first signing the Agreement, though they can opt out of the arbitration provisions as specifically provided in the Agreement.

10. Contractors have access to the Terms of Use, the Non-Disclosure and Dispute Resolution Agreement, and Privacy Statement through their Spark Driver profile or on the Spark Driver App, which they can access using their unique log-in credentials. From their Spark Driver App, contractors can navigate to these documents through the settings options.

11. Walmart securely stores the data regarding each contractor's signed or accepted agreements, including the Agreement. I have reviewed Walmart's Spark Driver platform records regarding Plaintiff Tina Crow ("Crow"). Those records reflect Crow and Walmart entered into the agreement titled "Non-Disclosure and Dispute Resolution Agreement" on October 28, 2023 (the "Agreement"). A true and correct copy of the Agreement is attached hereto as **Exhibit 1.** Attached as **Exhibit 2** is the business record that recorded Crow's acknowledgment of the Agreement (identified as "NDA") on the date stated above.

12. I have reviewed Walmart's records and confirmed Crow electronically reviewed and accepted the Agreement on October 28, 2023, using the email address and password she provided

as her credentials for the Spark Driver Platform. I have also reviewed the driver opt-outs Walmart received related to the arbitration provision and have confirmed Crow did not elect to opt out of the arbitration provision.

13. A driver who chooses to contract on the Spark Driver platform must agree to comply with the TOU (sometimes called a "Service Agreement") to be eligible to receive order offers using the platform and provide pickup and delivery services. Accordingly, Crow acknowledged the TOU. A true and correct copy of the TOU acknowledged by Crow, most recently on February 26, 2025, from Walmart's business records, is attached hereto as **Exhibit 3.**

14. Walmart deactivated Crow's account to use the Spark Driver platform on April 1, 2025, for violating the TOU.

15. On further review, Walmart reactivated Crow's account to use the platform on June 9, 2025.

16. According to Walmart's business records, per letter dated June 13, 2025, Crow sent a demand regarding the circumstances of her reactivation.

17. After receiving additional evidence, Walmart again deactivated Crow's account to use the Spark Driver platform on June 25, 2025, for violating the TOU.

18. According to Walmart's business records, Walmart received from Crow an email dated June 25, 2025, requesting to dispute her deactivation from the Spark Driver platform on that same date.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 5th day of November 2025, at Bentonville, Arkansas.

Signed by:
Ashley O'Brien
889BC2D586594DC
____________________

ASHLEY O'BRIEN

# EXHIBIT 1

# NON-DISCLOSURE AND DISPUTE RESOLUTION AGREEMENT

**IMPORTANT: Please review this Agreement carefully.** This Agreement is a binding contract that addresses important legal issues. Entering into the Agreement, including the **Arbitration Provision in Section II below**, will affect your legal rights. It is your sole responsibility to read and understand this Agreement and its **Arbitration Provision, WHICH REQUIRES THE PARTIES TO RESOLVE ALL DISPUTES ON AN INDIVIDUAL BASIS IN FINAL AND BINDING ARBITRATION TO THE FULLEST EXTENT PERMITTED BY LAW, UNLESS YOU OPT OUT OF ARBITRATION AS PROVIDED IN THE ARBITRATION PROVISION**. The **Arbitration Provision** shall be governed exclusively by the Federal Arbitration Act ("FAA"); however, if it is determined that the FAA does not apply to the **Arbitration Provision**, and you perform Services contemplated by this Agreement in South Carolina, then THE SOUTH CAROLINA UNIFORM ARBITRATION ACT SHALL APPLY. You are free to seek assistance or advice from an advisor of your choice before entering into the Agreement if you so choose.

This NON-DISCLOSURE AND DISPUTE RESOLUTION AGREEMENT ("Agreement") is made and entered into by and between Walmart Inc. ("Walmart") and you ("Contractor" or "You"), an independent contractor engaged in the business of performing the Services contemplated by this Agreement. By entering into this Agreement, You acknowledge that You have read, understood, and voluntarily accept the terms of this Agreement and intend to be bound by this Agreement. This Agreement is effective as of the date and time you accept it.

## RECITALS

Walmart is a company that seeks to connect independent individuals and entities in the delivery business with customers to facilitate the delivery of goods purchased by customers and other tasks for customers (collectively, "Services").

Contractor is an independent business providing Services, authorized and able to satisfy any and all legal requirements necessary to perform the services contemplated by this Agreement in the geographic location(s) in which Contractor operates.

Contractor represents that Contractor lawfully possesses all equipment, insurance, permits, and licenses necessary to perform Services in accordance with all applicable laws, and desires to receive opportunities to perform deliveries.

Contractor acknowledges and agrees that this Agreement is between independent businesses that are separately owned and operated; that the Parties have the relationship of principal and independent enterprise/contractor, not that of employer and employee; and that neither Party shall have the right to bind the other by contract (or otherwise) except as specifically provided in this Agreement.

In the process of performing deliveries, Contractor will be given or provided access to Walmart's confidential and proprietary information, which Contractor will hold in confidence consistent with the terms of this Agreement.

If a dispute arises between the Parties that cannot be resolved informally, Contractor and Walmart desire to resolve the dispute solely through final and binding arbitration on an individual basis to the fullest extent permitted by law, unless Contractor timely opts out of arbitration, as further detailed in the Arbitration Provision below.

In consideration of these recitals and of the mutual promises below, the Parties agree as follows:

**TERMS**

**I. CONFIDENTIALITY AND NON-DISCLOSURE**

**A. CONFIDENTIAL INFORMATION:** Contractor acknowledges that it will receive certain technical, business, and economic information which Walmart deems proprietary and confidential, including any and all information or data, whether in oral, audio, visual, written or other form, communicated to Contractor which is either identified as confidential or which by its nature is generally considered proprietary and confidential, regardless of whether such information is specifically labeled as such (collectively, "Confidential Information"). Confidential Information includes, without limitation: (i) information and data concerning Walmart's business; (ii) financial information that has not been disclosed publicly by Walmart; (iii) customer names, addresses, and contact persons; (iv) rates, rating methods, and billing practices; (v) vendors names, addresses, and contact persons; (vi) marketing and financial plans; (vii) the names, addresses, and information pertaining to Walmart employees or other contractors; and (viii) methods, formulae, systems, data, processes, designs, technology, tables, calculations, letters, agreements, documents, and know-how.

**B. NON-USE AND NON-DISCLOSURE:**

i. Contractor agrees that it shall maintain the confidentiality of all Confidential Information it receives or otherwise obtains and that it shall not disclose such information or transmit any documents or copies containing such information to any other party,

except as permitted under the terms of this Agreement. Contractor shall use at least that standard of care with respect to protecting the Confidential Information that it accords its own proprietary and confidential information, but not less than a reasonable degree of care.

ii. Contractor further agrees that at no time shall it use or knowingly permit any other person or entity to examine, use, derive any benefit from, or otherwise exploit the Confidential Information without Walmart's prior written consent or as permitted under the terms of this Agreement. Contractor shall not disclose any Confidential Information to anyone other than Contractor's employees, agents, and representatives authorized by Walmart: (i) who have a reasonable need-to-know such Confidential Information in connection with the business relationship or transaction to which this Agreement relates, (ii) who have been advised of the confidential nature of the information, and (iii) who have agreed to be bound by the terms of this Agreement. Contractor shall be responsible for any breach of this Agreement by its employees, agents, and representatives.

iii. The duty of non-disclosure shall not apply to information when: (i) such information was in the public domain at the time it was communicated to Contractor or subsequently enters the public domain through no fault of Contractor; (ii) Contractor can prove such information was independently developed by Contractor or was already known to Contractor at the time of receipt; (iii) such information was communicated rightfully to Contractor free of any obligation of nondisclosure and without restriction as to use; or (iv) such information is required to be disclosed by Contractor pursuant to judicial order or other compulsion of law, provided that Contractor shall provide to Walmart prompt notice of any such order and comply with any protective or similar order imposed on such disclosure. In the event of unauthorized disclosure of Confidential Information by Contractor, Contractor shall bear the burden of proof of demonstrating that the information falls under one of the above-described exceptions.

iv. The purpose of this Agreement and its confidentiality and non-disclosure obligations is to protect Walmart from harm through misappropriation of its trade secrets, proprietary information, and materials, and other forms of unfair competition. Nothing in this agreement prohibits Contractor from reporting an event that Contractor reasonably and in good faith believes is a violation of law to the relevant law-enforcement agency, or from cooperating in an investigation conducted by such a government agency. This may include disclosure of trade secret or confidential information within the limitations permitted by the Defend Trade Secrets Act (DTSA). Contractor is notified that under the DTSA, no individual will be held criminally or civilly liable under Federal or State trade secret law for disclosure of a trade secret (as defined in the Economic Espionage Act) that is: (A) made in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney, and made solely for the purpose of reporting or investigating a suspected violation of law; or, (B) made in a complaint or other document filed in a lawsuit or other proceeding (including arbitration), if such filing is made under seal so that it is not made public. Further, an individual who pursues a claim for retaliation for reporting a suspected violation of the law may disclose the trade secret to the attorney of the individual and use the trade secret information in the proceeding, if the individual files any document containing the trade secret under seal, and does not disclose the trade secret,

except as permitted by order of a court of competent jurisdiction or an arbitrator presiding in a dispute between Contractor and Walmart.

**C. LIMITATION ON USE**: Unless specified below or otherwise agreed in writing by Walmart, Contractor shall use the Confidential Information solely in connection with its performance of Services contemplated by this Agreement and for no other purpose(s).

**D. OWNERSHIP AND IMPLIED RIGHTS:** All Confidential Information shall remain the exclusive property of Walmart, and nothing in this Agreement shall be deemed to grant Contractor any rights in or to the Confidential Information, or any part thereof.

**E. RESTRICTIONS ON COPYING:** Contractor shall not make copies of any Confidential Information, except as may be strictly necessary to carry out the purposes stated herein. Contractor agrees that any copies made shall bear a clear stamp or legend indicating their confidential nature. Contractor agrees not to remove, overprint, or deface any notice of copyright, trademark, logo, or other notices of ownership from any originals or copies of Confidential Information.

**F. RETURN OF MATERIALS:** Upon completion of the purposes stated above, termination of the contractor relation with Walmart, or upon Walmart's earlier request, Contractor shall promptly return all materials incorporating Confidential Information and all copies of the same, and shall cause any third parties to whom disclosure was made to do the same, except any third parties expressly authorized to possess such materials.

**G. AFFILIATES:** Nothing in this Agreement shall be deemed to permit access by Contractor's affiliates to Confidential Information provided pursuant to the terms of this Agreement without Walmart's prior written consent. An "affiliate" is any entity which controls, is controlled by, or is under common control with Contractor. For purposes of this definition, an entity shall be deemed to control another entity if it owns or controls, directly or indirectly, more than fifty percent (50%) of the voting equity or assets of the other entity (or other comparable ownership interest for any entity other than a corporation).

**H. SECURITIES LAWS:** Contractor hereby acknowledges that it is aware, and agrees that it will advise those persons who are informed about the matters that are the subject of this Agreement, that federal and state securities laws prohibit any person who has received material, non-public information concerning Walmart, including, without limitation, the matters that are the subject of this Agreement, from purchasing or selling securities of Walmart or from communicating that information to any other person who may purchase or sell or otherwise violate such laws. Contractor agrees to abide by the terms of Walmart's Insider Trading and Confidentiality Policy and Procedure memorandum, distributed to Contractor on or before the date of this Agreement.

**I. NO REPRESENTATION:** In providing Confidential Information hereunder, Walmart makes no representation, express or implied, as to its adequacy, sufficiency, or freedom from defect of any kind, including freedom from any patent infringement that may result from the use of such Confidential Information provided hereunder.

**J. BREACH:** In the event of Contractor's breach of this Confidentiality and Non-Disclosure Provision, Walmart shall have the right to: (a) demand the immediate return of all Confidential Information; (b) recover its actual damages incurred by reason of such breach, including, without limitation, its attorneys' fees and costs of suit; (c) obtain injunctive relief to prevent such breach or to otherwise enforce the terms of this Agreement (as more specifically described in the Arbitration Provision, as addressed below); and (d) pursue any other remedy available at law or in equity.

## II. DISPUTE RESOLUTION ("ARBITRATION PROVISION")

**A. ARBITRATION OF CLAIMS**: The Parties expressly agree that this Arbitration Provision is governed exclusively by the Federal Arbitration Act , 9 U.S.C. §§ 1-16 ("FAA"), and evidences a transaction involving commerce, and Contractor agrees that this is not a contract of employment involving any class of workers engaged in foreign or interstate commerce within the meaning of Section 1 of the FAA. The validity, interpretation, and enforcement of this Arbitration Provision shall be governed by the FAA even if Claimant and/or Walmart are otherwise exempt from the FAA. The provisions of this Arbitration Provision shall remain in force after the Parties' contractual relationship ends. **Except as it or the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 otherwise provides, this Arbitration Provision is intended to apply to the resolution of all disputes between the Parties, and requires all such disputes to be resolved on an individual basis and only by an arbitrator through final and binding arbitration and not by way of a court or jury trial, nor a proceeding before any other governmental body, and not by way of a class, collective, mass, or representative action or proceeding.**

**i.** *State Arbitration Acts*: As stated above, the Parties expressly agree that this Arbitration Provision is governed exclusively by the FAA, and it is the Parties' express intent that this Arbitration Provision shall be enforceable to the fullest extent of law even if it is determined that the FAA does not apply. Moreover, if, and only if, it is determined that the FAA does not apply to this Arbitration Provision, the arbitration laws of the State(s) in which Contractor performed Services contemplated by this Agreement shall apply. Specifically, the Parties agree that:

- If Contractor performed Services contemplated by this Agreement in Alabama, then the Alabama Arbitration Act shall apply;
- If Contractor performed Services contemplated by this Agreement in Alaska, then the Alaska Revised Uniform Arbitration Act shall apply;
- If Contractor performed Services contemplated by this Agreement in Arizona, then the Arizona Uniform Arbitration Act shall apply;
- If Contractor performed Services contemplated by this Agreement in Arkansas, then the Arkansas Uniform Arbitration Act shall apply;
- If Contractor performed Services contemplated by this Agreement in California, then the California Arbitration Act shall apply;

- If Contractor performed Services contemplated by this Agreement in Colorado, then the Colorado Uniform Arbitration Act shall apply;
- If Contractor performed Services contemplated by this Agreement in Connecticut, then the Connecticut Revised Uniform Arbitration Act shall apply;
- If Contractor performed Services contemplated by this Agreement in Delaware, then the Delaware Uniform Arbitration Act shall apply;
- If Contractor performed Services contemplated by this Agreement in the District of Columbia, then the District of Columbia Revised Uniform Arbitration Act shall apply;
- If Contractor performed Services contemplated by this Agreement in Florida, then the Revised Florida Arbitration Code shall apply;
- If Contractor performed Services contemplated by this Agreement in Georgia, then the Georgia Arbitration Code shall apply, and the initial requirement set forth in OCGA § 9-9-2(c)(9), to the extent it applies, shall be satisfied by Contractor's acceptance of this Arbitration Agreement;
- If Contractor performed Services contemplated by this Agreement in Hawaii, then the Hawaii Revised Uniform Arbitration Act shall apply;
- If Contractor performed Services contemplated by this Agreement in Idaho, then the Idaho Uniform Arbitration Act shall apply;
- If Contractor performed Services contemplated by this Agreement in Illinois, then the Illinois Uniform Arbitration Act shall apply;
- If Contractor performed Services contemplated by this Agreement in Indiana, then the Indiana Uniform Arbitration Act shall apply;
- If Contractor performed Services contemplated by this Agreement in Iowa, then the Iowa Arbitration Act shall apply;
- If Contractor performed Services contemplated by this Agreement in Kansas, then the Kansas Uniform Arbitration Act shall apply;
- If Contractor performed Services contemplated by this Agreement in Kentucky, then the Kentucky Uniform Arbitration Act shall apply;
- If Contractor performed Services contemplated by this Agreement in Louisiana, then the Louisiana Binding Arbitration Law shall apply;
- If Contractor performed Services contemplated by this Agreement in Maine, then the Maine Uniform Arbitration Act shall apply;
- If Contractor performed Services contemplated by this Agreement in Maryland, then the Maryland Uniform Arbitration Act shall apply;

- If Contractor performed Services contemplated by this Agreement in Massachusetts, then the Massachusetts Uniform Arbitration Act shall apply;
- If Contractor performed Services contemplated by this Agreement in Michigan, then the Michigan Uniform Arbitration Act shall apply;
- If Contractor performed Services contemplated by this Agreement in Minnesota, then the Minnesota Uniform Arbitration Act shall apply;
- If Contractor performed Services contemplated by this Agreement in Mississippi, then the Mississippi Arbitration Act shall apply;
- If Contractor performed Services contemplated by this Agreement in Missouri, then the Missouri Uniform Arbitration Act shall apply;
- If Contractor performed Services contemplated by this Agreement in Montana, then the Montana Uniform Arbitration Act shall apply;
- If Contractor performed Services contemplated by this Agreement in Nebraska, then the Nebraska Uniform Arbitration Act shall apply;
- If Contractor performed Services contemplated by this Agreement in Nevada, then the Nevada Uniform Arbitration Act of 2000 shall apply;
- If Contractor performed Services contemplated by this Agreement in New Hampshire, then N.H. Rev. Stat. Ann. § 542:1 shall apply;
- If Contractor performed Services contemplated by this Agreement in New Jersey, then the New Jersey Arbitration Act shall apply;
- If Contractor performed Services contemplated by this Agreement in New Mexico, then the New Mexico Uniform Arbitration Act shall apply;
- If Contractor performed Services contemplated by this Agreement in New York, then the New York Civil Practice Law & Rules § 7501 *et seq.* shall apply;
- If Contractor performed Services contemplated by this Agreement in North Carolina, then the North Carolina Revised Uniform Arbitration Act shall apply;
- If Contractor performed Services contemplated by this Agreement in North Dakota, then the North Dakota Uniform Arbitration Act shall apply;
- If Contractor performed Services contemplated by this Agreement in Ohio, then the Ohio Arbitration Act shall apply;
- If Contractor performed Services contemplated by this Agreement in Oklahoma, then the Oklahoma Uniform Arbitration Act shall apply;

- If Contractor performed Services contemplated by this Agreement in Oregon, then the Oregon Arbitration Act shall apply, and Contractor agrees to the following:

  **I acknowledge that I have received and read or have had the opportunity to read this arbitration agreement. I understand that this arbitration agreement requires that disputes that involve the matters subject to the agreement be submitted to mediation or arbitration pursuant to the arbitration agreement rather than to a judge and jury in court.**

- If Contractor performed Services contemplated by this Agreement in Pennsylvania, then the Pennsylvania Uniform Arbitration Act shall apply;
- If Contractor performed Services contemplated by this Agreement in Puerto Rico, then the Puerto Rico Arbitration Act shall apply;
- If Contractor performed Services contemplated by this Agreement in Rhode Island, then the Rhode Island Arbitration Act shall apply;
- If Contractor performed Services contemplated by this Agreement in South Carolina, then the South Carolina Uniform Arbitration Act shall apply;
- If Contractor performed Services contemplated by this Agreement in South Dakota, then the South Dakota Uniform Arbitration Act shall apply;
- If Contractor performed Services contemplated by this Agreement in Tennessee, then the Tennessee Uniform Arbitration Act shall apply;
- If Contractor performed Services contemplated by this Agreement in Texas, then the Texas Arbitration Act shall apply;
- If Contractor performed Services contemplated by this Agreement in Utah, then the Utah Uniform Arbitration Act shall apply;
- If Contractor performed Services contemplated by this Agreement in Vermont, then the Vermont Arbitration Act shall apply, and Contractor agrees to the following ACKNOWLEDGMENT OF ARBITRATION:

  I understand that this agreement with Walmart contains an agreement to arbitrate. After accepting this document, I understand that I will not be able to bring a lawsuit concerning any dispute that may arise which is covered by the arbitration agreement, unless it involves a question of constitutional or civil rights. Instead, I agree to submit any such dispute to an impartial arbitrator.

- If Contractor performed Services contemplated by this Agreement in Virginia, then the Virginia Uniform Arbitration Act shall apply;
- If Contractor performed Services contemplated by this Agreement in Washington, then the Washington Uniform Arbitration Act shall apply;
- If Contractor performed Services contemplated by this Agreement in West Virginia, then the West Virginia Revised Uniform Arbitration Act shall apply;
- If Contractor performed Services contemplated by this Agreement in Wisconsin, then the Wisconsin Arbitration Act shall apply;
- If Contractor performed Services contemplated by this Agreement in Wyoming, then the Wyoming Uniform Arbitration Act shall apply.

**ii.** *Claims Covered By Arbitration Provision*: Unless expressly limited below, the FAA and this Arbitration Provision shall exclusively govern the interpretation and enforcement of this Arbitration Provision, and shall apply to any and all disputes between the Parties regardless of whether brought by Walmart against Contractor or by Contractor against Walmart or any of its agents, employees, affiliates, successors, assigns, or subsidiaries (each of which are intended third party beneficiaries of this Arbitration Provision), including but not limited to: (1) disputes arising out of or related to this Agreement; (2) disputes arising out of or related to Contractor's classification as an independent contractor; (3) disputes arising out of or related to the actual or any alleged relationship between Contractor and Walmart, including termination of the relationship, whether arising under federal, state, or local law; and (4) disputes arising out of or relating to Contractor's performance of Services. This Arbitration Provision also applies, without limitation, to disputes regarding any city, county, local, state, or federal wage-and-hour law, employment law, trade secrets, unfair competition, compensation, meal or rest periods, expense reimbursement, uniform maintenance, training, termination, discrimination or harassment and claims arising under the Fair Credit Reporting Act, Defend Trade Secrets Act, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §1981, the Rehabilitation Act, the Civil Rights Acts of 1866 and 1871, the Civil Rights Act of 1991, 8 U.S.C. § 1324b (unfair immigration related practices), the Pregnancy Discrimination Act, Equal Pay Act, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act (except for claims for employee benefits under any benefit plan sponsored by the Company and (a) covered by the Employee Retirement Income Security Act of 1974 or (b) funded by insurance), Affordable Care Act, Genetic Information Non-Discrimination Act, Uniformed Services Employment and Reemployment Rights Act, Worker Adjustment and Retraining Notification Act, Older Workers Benefits Protection Act of 1990, Occupational Safety and Health Act, Consolidated Omnibus Budget Reconciliation Act of 1985, False Claims Act, state or local statutes or regulations addressing the same or similar subject matters, and all other federal, state, or local statutory and legal claims (including without limitation torts) arising out of or relating to Contractor's relationship with Walmart or the termination of that relationship.

**iii.** *Delegation Clause*: Only an arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute arising out of or relating

to the interpretation, applicability, enforceability, or formation of this Arbitration Provision, including without limitation any dispute concerning arbitrability. However, the preceding sentence shall not apply to any dispute relating to or arising out of the Class Action Waiver and/or Representative Action Waiver—including, but not limited to, any claim that all or part of the Class Action Waiver and/or Representative Action Waiver is unenforceable, unconscionable, illegal, void, or voidable; that a breach of either such Waiver has occurred; or that arbitration has been sought in a manner that violates the individual arbitration requirement in the Class Action Waiver and Representation Action Waiver—which must proceed in a court of competent jurisdiction and cannot be heard or arbitrated by an arbitrator. Moreover, all disputes relating to or arising out of whether either Party has satisfied the condition precedent of engaging in a pre-arbitration informal telephonic dispute resolution conference discussed below, shall be decided only by a court of competent jurisdiction and not by an arbitrator. The Parties agree that any and all due dates for arbitration fees shall be tolled while the Parties resolve a dispute relating to or arising out of the Class Action Waiver and/or Representative Action Waiver.

**iv.** *Third-Party Beneficiaries to Arbitration Provision*: The Parties agree that any entity with whom Walmart or Contractor used to administer the relationship between the Parties or facilitate payment between Walmart and Contractor or Walmart and a third party, is an intended third party beneficiary of this Arbitration Provision.

**v.** *Limitations on Application of This Arbitration Provision*: This Arbitration Provision does not apply to claims for workers compensation, state disability insurance, or unemployment insurance benefits. This Arbitration Provision does not prevent Contractor from filing unfair labor practice charges with the National Labor Relations Board (www.nlrb.gov). Walmart will not retaliate against Contractor for filing such a charge. Nothing in this Arbitration Provision prevents Contractor from making a report to or filing a claim or charge with a government agency, including without limitation the Equal Employment Opportunity Commission, U.S. Department of Labor, U.S. Securities and Exchange Commission, National Labor Relations Board, or Office of Federal Contract Compliance Programs. Nothing in this Arbitration Provision prevents the investigation by a government agency of any report, claim, or charge otherwise covered by this Arbitration Provision. This Arbitration Provision also does not prevent federal administrative agencies from adjudicating claims and awarding remedies based on those claims, even if the claims would otherwise be covered by this Arbitration Provision. Nothing in this Arbitration Provision prevents or excuses a party from satisfying any conditions precedent and/or exhausting administrative remedies under applicable law or as required under this Agreement before bringing a claim in arbitration. Walmart will not retaliate against Contractor for filing a claim with an administrative agency or for exercising rights (individually or in concert with others) under Section 7 of the National Labor Relations Act. This Arbitration Provision does not apply to claims alleging conduct constituting a sexual assault dispute or sexual harassment dispute as defined in the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021, and a Party bringing such a claim may elect whether or not to resolve only the sexual assault dispute or sexual harassment dispute allegations through arbitration or in court with respect to a case which is filed under Federal, Tribal, or State law. If a Party determines to bring a qualifying sexual assault dispute or sexual harassment dispute in

arbitration rather than in court, such claim shall be brought in arbitration on an individual basis only, and not on a class, collective, mass, or representative basis.

**vi.** *Additional Claims*: A Party may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy in accordance with applicable law, and any such application shall not be deemed incompatible with or waiver of this Arbitration Provision.

**B. CLASS AND REPRESENTATIVE ACTION WAIVERS:** Any dispute between the Parties shall be brought in arbitration on an individual basis only, and not on a class, collective, mass, or representative basis, or in any other manner that sacrifices the principal advantages of individual arbitration.

**i. CLASS ACTION WAIVER:** Any and all disputes or claims between the Parties shall be resolved only in individual arbitration. The Parties expressly waive the right to have any dispute or claim brought, heard, administered, resolved, or arbitrated as a class, collective, or mass action, and neither an arbitrator nor an arbitration provider shall have any authority to hear, arbitrate, or administer any class, collective, and/or mass action, or to award relief to anyone but the individual in arbitration ("Class Action Waiver"). Contractor and Walmart agree that the definition of a "class, collective, and/or mass action" includes, but is not limited to, instances in which Contractor is represented by a law firm or collection of law firms that has filed more than 25 arbitration demands of a substantially similar nature against Walmart within 180 days of the arbitration demand filed on Contractor's behalf, and the law firm or collective law firm seeks to simultaneously or collectively administer and/or arbitrate all the arbitration demands in the aggregate. If more than 25 arbitration demands of a substantially similar nature are filed against Walmart by the same law firm or collection of law firms within 180 days of one another, each arbitration demand must be filed, administered, arbitrated, and resolved in an individual manner. This Class Action Waiver does not prevent Contractor or Walmart from participating in a classwide, collective, or mass settlement of claims.

**ii. REPRESENTATIVE ACTION WAIVER:** Any and all disputes or claims between the Parties shall be resolved only in individual arbitration. The Parties expressly waive their right to have any dispute or claim brought, heard, administered, resolved, or arbitrated as a representative action, or to participate in any representative action, including but not limited to, claims brought under any state's Private Attorneys General Act, and neither an arbitrator nor an arbitration provider shall have any authority to hear, arbitrate, or administer a representative action, or to award relief to anyone but the individual in arbitration ("Representative Action Waiver"). This Representative Action Waiver does not prevent Contractor or Walmart from participating in a classwide, collective, or mass settlement of claims. Disputes regarding the nature of Contractor's relationship with Walmart (including, but not limited to, any claim that Contractor is an employee of Walmart), as well as any claim that Contractor brings on its own behalf as an aggrieved worker for recovery of underpaid wages or other individualized relief (as opposed to a representative claim for civil penalties) are arbitrable and must be brought in arbitration on an individual basis only as required by this Arbitration Provision. Contractor agrees that any representative claim that is permitted to proceed in a civil court of competent jurisdiction must be stayed pending arbitration of Contractor's dispute regarding the nature of

Contractor's relationship with Walmart and any claim that Contractor brings on its own behalf for individualized relief.

**C. ARBITRATION PROCEDURE**:

**i.** *Informal Telephonic Dispute Resolution Conference*: To expedite resolution and reduce the cost of a dispute, controversy, or claim between the Parties, the Parties agree to first engage in a good-faith effort to resolve any claim covered by this Arbitration Provision through an informal telephonic dispute resolution conference between Contractor and Walmart before commencing arbitration. The informal telephonic dispute resolution conference shall be individualized such that a separate conference must be held each time either Party intends to commence individual arbitration; multiple Contractors initiating claims cannot participate in the same informal telephonic dispute resolution conference. If either Party is represented by counsel, that Party's counsel may participate in the informal telephonic dispute resolution conference, but the Party also must appear at and participate in the conference. The Party initiating the claim must give notice to the other in writing of its intent to initiate an informal telephonic dispute resolution conference. If Contractor is the initiating Party, it shall provide written notice to Walmart at SparkAppNotices@walmart.com. If Walmart is the initiating Party, it shall provide written notice to Contractor at the email address associated with Contractor's Spark App account. The informal telephonic dispute resolution conference shall occur between thirty (30) and forty-five (45) days of the other Party receiving written notice, unless an extension is mutually agreed upon by the Parties. In the interval between the Party receiving notice and the informal telephonic dispute resolution conference, nothing in this Arbitration Provision or Agreement shall prohibit the Parties from engaging in informal communications to resolve the initiating Party's claims. Engaging in an informal telephonic dispute resolution conference is a condition precedent that must be fulfilled before commencing individual arbitration. The statute of limitations and any arbitration fee deadlines shall be tolled while the Parties engage in the informal dispute resolution process required by this paragraph.

**ii.** *Making a Demand for Arbitration*: Only after the Parties have engaged in a good-faith effort to resolve the dispute through an informal telephonic dispute resolution conference, and only if those efforts fail, either Contractor or Walmart may initiate arbitration by notifying the other Party in writing by hand or first-class mail within the applicable statute of limitations period. The demand for arbitration must include (1) the name, telephone number, mailing address, and email address of the Party seeking arbitration; (2) a statement of the legal claims asserted and the factual bases of those claims; and (3) a description of the remedy sought and an accurate, good-faith calculation of the amount in controversy (any request for injunctive relief or attorneys' fees shall not count toward the calculation of the amount in controversy unless such injunctive relief seeks the payment of money); and (4) the original personal signature of the Party seeking arbitration (a digital, electronic, copied, or facsimile signature is not sufficient). If the Party seeking arbitration is represented by counsel, counsel must also provide an original personal signature on the demand for arbitration (a digital, electronic, copied, or facsimile signature is not sufficient). By signing the demand for arbitration, counsel certifies to the best of counsel's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that (1) the demand for arbitration is not being presented for any

improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of dispute resolution; (2) the claims and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; and (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Any demand for arbitration by Contractor must be delivered to Walmart to the Attention of the Legal Department, Walmart Inc., 702 Southwest 8th Street, Bentonville, Arkansas 72716. The Arbitrator shall resolve all disputes regarding the timeliness or propriety of the demand for arbitration.

**iii.** *Arbitrator Selection*: The Arbitrator shall be selected by mutual agreement of the Parties. Unless the Parties mutually agree otherwise, the Arbitrator shall be an attorney with experience in the law underlying the dispute or a retired federal or state judicial officer. If for any reason the Parties cannot agree to an Arbitrator, either party may apply to a court of competent jurisdiction under 9 U.S.C. § 5 for appointment of a neutral Arbitrator or arbitration provider. The court shall then appoint an Arbitrator, who shall act under this Arbitration Provision with the same force and effect as if the Parties had selected the Arbitrator by mutual agreement.

**iv.** *Rules of Arbitration*: Once the Parties mutually agree upon a neutral Arbitrator or arbitration provider, or an Arbitrator or arbitration provider is appointed by a court of competent jurisdiction, then the ensuring arbitration shall proceed according to the rules agreed upon by the parties and the Arbitrator or arbitration provider, except that:

**(a)** If a Party timely serves an offer of judgment under Federal Rule of Civil Procedure 68, or any other state-law equivalent, and the judgment that the other Party finally obtains is not more favorable than the unaccepted offer, then the other Party shall pay the costs, including filing fees, incurred after the offer was made;

**(b)** The location of the arbitration proceeding shall be no more than 45 miles from the Walmart location in or nearest to the region in which Contractor performed Services contemplated by this Agreement, unless each party to the arbitration agrees otherwise in writing.

**(c)** The Parties shall have the right to conduct adequate civil discovery, and the Arbitrator may issue orders (including subpoenas to third parties), so that the Parties may adequately prepare their claims and defenses, taking into consideration that arbitration is designed to be a speedy and efficient method for resolving disputes;

**(d)** The Parties may bring dispositive motions, and present witnesses and evidence as needed to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator. An Arbitrator may not permit the filing of a motion for summary judgment until after the Parties have conducted discovery to support their claims and defenses. Any dispositive motion shall otherwise be governed by the standards of the Federal Rules of Civil Procedure governing such motions;

**(e)** Any finding that a claim or counterclaim was filed for purposes of harassment or is frivolous shall entitle the other Party to recover its attorneys' fees, costs, and expenses;

**(f)** The Arbitrator may consider, but under no circumstances is the Arbitrator bound by, decisions reached in separate arbitrations;

**(g)** If at any time the Arbitrator fails to enforce the terms of this Arbitration Provision, either Party may seek to enjoin the arbitration proceeding in a court of competent jurisdiction, and the arbitration shall automatically be stayed pending the outcome of that proceeding.

**D. ATTORNEYS' FEES AND ARBITRATION COSTS**: Each Party shall pay the fees for its own attorneys, subject to any remedies to which that Party may later be entitled under applicable law, as determined by the Arbitrator. Costs incidental to the arbitration, including the Arbitrator's fees and costs for the meeting site ("Arbitration Costs"), will be borne by Walmart and Contractor equally, unless otherwise required by applicable law. Any dispute regarding a Party's obligation to pay Arbitration Costs shall be determined by the Arbitrator. In the event Contractor contends that, as a matter of law, Contractor is not responsible for payment of any or all Arbitration Costs, Contractor shall have no obligation to pay any portion of the contested Arbitration Costs until, and only if, the Arbitrator determines that Contractor is responsible for the costs. If necessary for arbitration of the dispute, Walmart agrees to advance the amount of the Arbitration Costs contested by Contractor until such time as the Arbitrator determines payment responsibility. If the Arbitrator determines that Contractor is responsible for any amount of the Arbitration Costs already paid by Walmart, Contractor shall remit payment of that amount to Walmart within 30 days or a reasonable time (whichever is later) of the Arbitrator's determination.

**E. POST-ARBITRATION PROCEDURES**: Within 30 days of the close of the arbitration hearing (which period may be extended by stipulation of the Parties), any Party shall have the right to prepare, serve on the other Party or Parties and file with the Arbitrator a post-arbitration brief. Except as provided in the Class Action Waiver and Representative Action Waiver, the Arbitrator may award any Party any remedy to which that Party is entitled under applicable law, but such remedies shall be limited to those that would be available to a Party in his or her or its individual capacity in a court of law for the claims presented to and decided by the Arbitrator, including but not limited to the imposition of sanctions under the Federal Rules of Civil Procedure, and no remedies that otherwise would be available to an individual in a court of law will be forfeited by virtue of this Arbitration Provision. The Arbitrator shall issue a reasoned decision or award in writing, stating the essential findings of fact and conclusions of law. Except as may be permitted or required by law, as determined by the Arbitrator if there is a dispute, neither a Party nor an Arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of the Parties or order of the Arbitrator. A Party may file the Arbitrator's decision or award in a court of competent jurisdiction for the purpose of seeking confirmation, vacatur, modification, or correction of that

decision or award. A court of competent jurisdiction shall have the authority to enter a judgment upon the award made pursuant to the arbitration.

**F. APPLICATION TO EXISTING CLAIMS AND CONTROVERSIES**: This Arbitration Provision is intended broadly to apply to all controversies covered by this Provision regardless of whether arising before or after this Arbitration Provision becomes effective, and including any existing controversy, as is permitted under Section 2 of the Federal Arbitration Act or other applicable law. But this Arbitration Provision shall not affect Contractor's standing with respect to any litigation between Contractor and Walmart that is pending in a state or federal court or arbitration as of the date this Arbitration Provision becomes effective.

**G. RIGHT TO OPT-OUT OF ARBITRATION**: This Arbitration Provision is not a mandatory component of this Agreement or Contractor's contractual relationship with Walmart. If Contractor does not want to be subject to this Arbitration Provision, Contractor may opt out by notifying Walmart in writing of Contractor's desire to opt out of this Provision. To be effective, the writing indicating Contractor's intent to opt out must be dated, signed, and submitted to Walmart within 30 days of Contractor's execution of this Agreement, by U.S. Mail to the Attention of the Legal Department, Walmart Inc., 702 Southwest 8th Street, Bentonville, Arkansas 72716. The written notice must be signed by the Contractor, and not any attorney, agent, or other representative of Contractor. A written notice submitted to Walmart indicating Contractor's intention to opt out may apply, at most, to that Contractor. Contractor (and Contractor's agent or representative) may not effectuate an opt out on behalf of other Contractors. Contractor's writing opting out of this Arbitration Provision will be filed with a copy of this Agreement and maintained by Walmart. If Contractor opts out this Arbitration Provision, Contractor will not be subject to any adverse action as a consequence of that decision and may pursue available legal remedies without regard to this Arbitration Provision. **If Contractor does not opt out of this Arbitration Provision within the thirty (30) day period, Contractor and Walmart will be bound by the terms of this Arbitration Provision.** If Contractor opts out of this Arbitration Provision and at the time of Contractor's receipt of this Agreement was bound by an existing agreement to arbitrate disputes arising out of or relating to Contractor's performance of Services contemplated by this Agreement, then that existing arbitration agreement shall remain in full force and effect.

**H. RIGHT TO CONSULT WITH AN ATTORNEY**: Contractor has the right to consult with private counsel of Contractor's choice with respect to any aspect of this Agreement, or any claim that may be subject to, this Arbitration Provision. In the event any portion of this Arbitration Provision is deemed unenforceable, the remainder of this Arbitration Provision will be enforceable.

**I. SEVERABILITY**: If any part of this Arbitration Provision is deemed unlawful or unenforceable, it shall be severed from the Agreement such that the remainder of this Arbitration Provision shall remain enforceable to the fullest extent permitted by law. In any case in which (1) the dispute is filed as a class, collective, mass, or representative action, and (2) there is a final judicial determination that all or part of the Class Action Waiver and/or Representative Action Waiver is invalid or unenforceable, the class, collective, mass, or representative action to that extent must be litigated in a civil court of competent jurisdiction,

but the portion of the Class Action Waiver and Representative Action Waiver that is valid and enforceable shall be enforced in arbitration.

## III. MISCELLANEOUS PROVISIONS

**A. SURVIVAL OF OBLIGATION:** All obligations of confidentiality, non-disclosure and non-use, and the Arbitration Provision shall survive completion or termination of this Agreement, as well as termination of any actual or alleged relationship or transaction between Walmart and Contractor.

**B. CHOICE OF LAW:** The choice of law terms contained in this Section III.B do not apply to the Arbitration Provision contained in Section II, such Arbitration Provision being governed by the Federal Arbitration Act except as expressly provided in Section II.A. Accordingly, and except as otherwise stated in Section II, the interpretation of this Agreement shall be governed by Arkansas law, without regard to the choice or conflicts of law provisions of any jurisdiction. However, this choice of law provision is not intended to create any other substantive right to non-Arkansas citizens to assert claims under Arkansas law whether that be by statute, common law, or otherwise. This choice of law provision, except as otherwise provided in the Arbitration Provision in Section II, is intended only to specify the use of Arkansas law to interpret this Agreement, and this provision shall not be interpreted as generally extending Arkansas law to Contractor if Contractor does not otherwise reside or provide Services contemplated by this Agreement in Arkansas. The law in states and/or jurisdictions in which Contractor performs Services contemplated by this Agreement shall apply to all disputes, claims, or causes of action alleging violation of law. Walmart's failure to enforce any right or provision in this Agreement shall not constitute a waiver of such right or provision unless acknowledged and agreed to by Walmart in writing.

**C. SEVERABILITY:** Except as expressly provided in Section II.I, if any part of this Agreement is deemed unlawful or unenforceable, it shall be severed from the Agreement such that the remainder of this Agreement shall remain enforceable to the fullest extent permitted by law.

**D. RELATIONSHIP OF THE PARTIES:** Contractor acknowledges that the Parties are two independent business enterprises and that nothing in this Agreement or any other (including any agreement between Contractor and a third party) shall be construed as making either party the partner, joint venturer, agent, employer, or employee of the other. Unless authorized in writing by the party to be bound, neither Party shall have the authority to make any statements, representations, or commitments of any kind, or to take any action which shall be binding on the other. Contractor understands and expressly acknowledges that: (1) Contractor is not Walmart's employee for any purpose; (2) Walmart shall have no responsibility for the wages, benefits, or expenses due Contractor's employees, agents, or subcontractors nor for income tax withholding, social security, unemployment, or other payroll taxes of Contractor's employees, agents, or subcontractors; and (3) neither Contractor nor Contractor's employees, agents, or subcontractors shall receive or have any right to receive any wages, including vacation pay or holiday pay, from Walmart; nor shall they participate or have any right to participate in any welfare plans or other Walmart benefits, if any, available to Walmart's employees, agents, or

subcontractors (even if Contractor or any of its employees, agents, or subcontractors are found to be employees of Walmart by an arbitrator, court or agency of competent jurisdiction).

**E. SUCCESSORS AND ASSIGNS:** Neither Party may assign or transfer this Agreement in whole or in part without the prior written consent of the other. Subject to the foregoing, this Agreement shall bind and inure to the benefit of the successors and assigns of each Party, as well as the third-party beneficiaries to the extent provided in the Arbitration Provision, above.

**F. PRIOR AGREEMENT:** This paragraph applies only if Contractor was a party to an earlier version of this Agreement (a "Prior Agreement") with Walmart prior to Contractor's acceptance of this Agreement. Except as provided in Section II G, this Agreement supersedes any Prior Agreement between the Parties, and Walmart and Contractor hereby terminate Contractor's Prior Agreement, effective as of Contractor's acceptance of this Agreement. The Parties, respectively, hereby waive any applicable notice requirements with respect to their termination of the Prior Agreement.

**By clicking "I agree," I expressly acknowledge that I have read, understood, and considered the consequences of this Agreement, including THAT THIS AGREEMENT CONTAINS AN ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES; that I affirmatively agree to be bound by the terms of this Agreement; and that I am legally competent to enter into this Agreement.**

# EXHIBIT 2

| DRVR_USER_ID | DRVR_FIRST_NM | DRVR_LAST_NM | DRVR_PH_NBR | DOC_TYPE | VER_NBR | ACTN_TS_PST | ACTN_DT_PST | ACTN_DT_UTC |
|---|---|---|---|---|---|---|---|---|
| tinacrow1005@gmail.com | TINA | CROW | 3182688797 | CONSENT | 1 | 10/28/2023 5:28 | 10/28/2023 | 10/28/2023 |
| tinacrow1005@gmail.com | TINA | CROW | 3182688797 | CONSENT | 2 | 1/6/2025 7:49 | 1/6/2025 | 1/6/2025 |
| tinacrow1005@gmail.com | TINA | CROW | 3182688797 | NDA | 4 | 10/28/2023 5:26 | 10/28/2023 | 10/28/2023 |
| tinacrow1005@gmail.com | TINA | CROW | 3182688797 | PROFILE_PIC_CONSENT | 1 | 6/16/2025 18:52 | 6/16/2025 | 6/16/2025 |
| tinacrow1005@gmail.com | TINA | CROW | 3182688797 | TNC | 4 | 10/28/2023 5:25 | 10/28/2023 | 10/28/2023 |
| tinacrow1005@gmail.com | TINA | CROW | 3182688797 | TNC | 5 | 3/23/2024 12:49 | 3/23/2024 | 3/23/2024 |
| tinacrow1005@gmail.com | TINA | CROW | 3182688797 | TNC | 6 | 12/30/2024 5:17 | 12/30/2024 | 12/30/2024 |
| tinacrow1005@gmail.com | TINA | CROW | 3182688797 | TNC | 6 | 2/26/2025 10:10 | 2/26/2025 | 2/26/2025 |

# EXHIBIT 3

**Spark Driver Contract and App Terms of Use**

*Last Updated: December 29, 2024*

This Spark Driver Contract and App Terms of Use (the "Terms of Use"), effective as of the Effective Date defined below, are your contract with Walmart governing your access to and use of the Walmart Spark Driver Mobile App ("Spark App"), including the service level standards required of you in connection with your access to the Spark App. By accessing or using the Spark App, you affirm that you are of legal age to enter into these Terms of Use. If you violate or do not agree to these Terms of Use, then your access to and use of the Spark App is unauthorized, and your Spark App account may be suspended or deactivated.

UPDATES: We may update these Terms of Use from time to time by notifying you of such changes by any reasonable means, including by posting a revised Terms of Use available through the Spark App. Any such changes will not apply to any dispute between you and us arising prior to the date on which we posted the revised Terms of Use incorporating such changes or otherwise notify you of such changes. By continuing to use or access any of the Spark App after authorized changes, you accept the updated Terms of Use. The "Last Updated" legend above indicates when these Terms of Use were last changed.

**TABLE OF CONTENTS**

Section 1: Definitions
Section 2: Standards and Requirements for Use of the Spark App
Section 3: Proprietary Rights
Section 4: Confidentiality
Section 5: App Use and Content Monitoring
Section 6: Privacy
Section 7: Representations and Warranties
Section 8: Indemnification and Disclaimer of Warranties
Section 9: Limitation of Liability
Section 10 Term and Termination
Section 11: Relationship of the Parties
Section 12: Class and Representative Action Waivers
Section 13: General
Section 14: Notice Regarding Apple

**1. Definitions**

**"Applicable Law"** means all laws, rules, regulations, orders, codes and ordinances applicable to all aspects of the Delivery Services, Permissive Services, and use of Spark App.
**"Content"** means any content you provide on or through the Spark App.
**"Data"** or **"Walmart Data"** means all data available to you related to the access and use of the Spark App, including all Product data, information about a receiving party, and all data related to the provision of Services via the Spark App.
**"Delivery Service(s)"** means your provision of delivery services for Receiving Parties as an independent contractor transporting the Products via the Spark App.
**"Device"** means a mobile device owned or controlled by you on which the Spark App has been installed solely for the purpose of providing Delivery or Permissive Services. To the extent such Device is owned by you, the Device shall meet the then current Company specifications for mobile devices. Details on current specifications can be found in the FAQs at sparkdriverapp.com.
"**Earnings**" means the money you receive in exchange for providing Services, excluding tips from customers.
"**Effective Date**" means the date you sign these Terms of Use or otherwise consent to these Terms of Use electronically.
**"Product"** means all items that are delivered by you while utilizing the Spark App.
**"Permissive Service(s)"** means any service, offered by non-Walmart providers through the Spark App, at Walmart's discretion, for your permissive use.
**"Receiving Party"** means a customer or other party receiving a Service.

**"Receiving Party Information"** means information about a Receiving Party made available to you in connection with the Services, which may include a Receiving Party's name, location, contact information, and any other related information.
**"Return Service"** means your provision of service in which you pick-up one or more items from a customer and return to the designated returns location.
**"Service(s)"** means, collectively or individually, Delivery Services, Permissive Services, Shopping Services, Return Service, or any other services you provide through the use of the Spark App.
**"Service Level Standard"** means any specific instructions, performance expectations, or standard of service communicated to you through these Terms of Use and other forms of communication associated with your provision of Services.
**"Service Offer(s)"** means a Service business opportunity offered to you through the Spark App.
**"Shopping Services"** means your provision of shopping services for Receiving Parties as an independent contractor via the Spark App.
**"Spark App"** means the mobile application provided by Walmart for the purpose of offering Delivery Services or Permissive Services.
**"Territory"** means the city, metro areas, or market in your country in which you are enabled by the Spark App to provide Services.

**"U.S."** means the 50 states collectively comprising the entity commonly known as the United States of America.
**"Vehicle"** means the street-legal and motorized Vehicle (not including a motorized scooter, bicycle, or skateboard or any other means of transportation that are not registered vehicles) controlled or owned by you, which is used for the purpose of providing Services.
**"Walmart"** means Walmart Inc., a Delaware corporation having its primary place of business 702 SW 8th Street, Bentonville, AR 72716, and any subsidiaries of Walmart Inc. (including any subsidiaries that Walmart Inc. may form or acquire in the future). We also refer to Walmart as "we," "us" and "our." But when we say, "Walmart Entities," we mean Walmart and its affiliates; its and their suppliers, vendors, contractors (other than independent contractors on the Spark App), and licensors; and its and their directors, officers, employees, and agents. Walmart can be contacted by mail at the address above as well as by phone at 855-743-0457 or by email at sparksupport@custhelp.com.
**"You"** or **"your"** means you, the person accepting these Terms of Use and agreeing to be bound by them, with the primary address you have provided in association with your Spark App account.

**WARRANTY DISCLAIMERS AND LIABILITY LIMITATIONS:** While there are important points throughout these Terms of Use, please note the warranty disclaimers and limitations on Walmart's liability explained in Sections 7, 8 and 9, respectively.

**WALMART DOES NOT PROVIDE DELIVERY SERVICES OR PERMISSIVE SERVICES. INDEPENDENT CONTRACTORS OFFER SERVICES THROUGH USE OF THE SPARK APP. WALMART OFFERS INFORMATION AND A METHOD FOR INDEPENDENT CONTRACTORS TO IDENTIFY BUSINESS OPPORTUNITIES THROUGH THE SPARK APP, BUT DOES NOT AND DOES NOT INTEND TO PROVIDE SERVICES AND HAS NO RESPONSIBILITY OR LIABILITY FOR ANY INDEPENDENT CONTRACTOR THAT USES THE SPARK APP.**

## 2. Standards and Requirements for Use of the Spark App

**A. Provision of Services.** You may only use this Spark App in connection with Services offered in Walmart's sole discretion through the Spark App. You will not use or access the Spark App for any other unauthorized purpose. You acknowledge that there may be other terms governing your provision of Services that are in addition to these Terms of Use. You are not authorized to subcontract Services to others; as the vetted Spark App account holder, you are the only person authorized to provide Services through your Spark App account, whether the Service includes driving, shopping, customer interaction, or other tasks. These Terms of Use are for your use of the Spark App in the U.S.; you will not engage with the Spark App outside of the U.S. for the purposes of completing identity verification, turning on the ability to receive Service Offers, or attempting to accept and/or complete Service Offers.
**B. Description/Itemization of Services:** Service Offers may include picking up orders at specified pick-up locations and dropping off at specified Receiving Party locations and/or shopping inside stores for customer orders and delivering those orders to Receiving Parties. Some Service Offers may include more than one drop-off, pick-up, or shopping order. You may see a description/itemization of services in the Spark App prior to accepting a Service Offer. The number of Service Offers you accept to perform is your choice; no minimum number is required. You may decide what days and times to perform Service Offers subject to any On Time Arrival and On Time Delivery standards noted in each Service Offer, pick-up location hours, and any laws regarding hours of providing Services. You will not accept Service Offers you do not intend to complete. Repeated acceptance and cancelling of Service Offers may result in termination of this agreement.
**C. Location of Services:** Service Offers will display the pick-up and drop-off location for Services. You may review the location for Services before accepting Service Offers.

D. **Service Level Standards: You are responsible for using your own business judgment and controlling how you complete Service Offers.** You agree to perform the Services in a professional, safe, and workmanlike manner, in compliance with standard industry practices, and following specific Service Level Standards and Applicable Law for each Service. An individual Service Offer posted on the Spark App or type of Service Offer posted on the Spark App may contain specific instructions or reference specific instructions housed elsewhere, each of which become a Service Level Standard under these Terms of Use when you accept the Delivery Service or Permissive Service Offer. Walmart reserves the right to consider a driver's adherence to the Service Level Standards when determining prioritization of Offers. For example, drivers with higher Customer Rating metrics may be offered certain Offers before drivers with lower Customer Rating metrics. You can learn more about Service Level Standards and the MyMetrics program, which helps you track key metrics, by visiting the Resources section of sparkdriverapp.com. **Walmart may terminate this contract and suspend or revoke your ability to utilize the Spark App if you fail to meet Service Level Standards.** You agree to meet the Service Level Standards, including the following:

i. <u>On-Time Arrival at Pick-up.</u> You agree to arrive at the pick-up location the later of either a) within 25 minutes after the time a Delivery Service Offer you accepted is designated to you or b) the 15 minute period prior to the pick-up displayed on the Delivery Service Offer. When there are multiple pick-up or drop-off points in a Delivery Offer, On-Time Arrival at Pick-up applies to the first pick-up point. On-Time Arrival at Pick-up is part of MyMetrics. The ratio of your On-Time Arrival at Pick-up will be available to you in the MyMetrics tab of the Spark App and information on minimum percentages will be available to you at sparkdriverapp.com

ii. <u>Reliability.</u> You agree to perform the Service Offers you accept. There is no minimum number of offers you are required to accept, but you must complete a Delivery Service once accepted. Multiple instances of accepting Delivery Service offers without completing them may result in deactivation from the Spark App. Information regarding the amount of offers you accept will be available to you in the MyMetrics tab of the Spark App.

iii. <u>Customer Service.</u> You agree to conduct your interactions with Receiving Parties and other individuals you engage with during the course of providing Services or otherwise participating in the Spark App program in a professional manner, performing Services with a reasonable standard of care, to maintain customer satisfaction with your provision of Services, and that you may receive customer ratings based on those interactions. You agree you will not make rude comments or use profanity, ask for tips, request Receiving Party contact information, advertise a business or service unrelated to the Delivery Service or Permissive Service you are providing, make unsolicited political or religious comments or complain about the Spark Driver platform or the Receiving Party's order. Customer Service is part of MyMetrics under the Customer Rating section. Your Customer Rating will be available to you in the MyMetrics tab of the Spark App and information on minimum rating requirements, if any, will be available to you at sparkdriverapp.com.

iv. <u>Vehicle Standards.</u> Vehicles used to provide Services must be clean, smoke free, have capacity to hold the Delivery Offer orders you choose to accept, and have the capacity to keep Delivery Offer orders contained, separate from each other, and free from contamination by pets, pet hair, smoke, or other contaminants. Walmart and other businesses posting Delivery Offers on the Spark App may refuse to provide orders to you if Vehicles do not meet these standards.

v. <u>Delivery Hand-Off.</u> Some Delivery Services require that you hand the order off to the Receiving Party at their doorstep, unless it is a no-contact delivery. If the Receiving Party does not answer the door, you agree to attempt to contact the Receiving Party through the Spark App before returning the order to the pick-up location. If performing any Delivery Service Offer requiring an unattended delivery (e.g., to be left at doorstep), you agree to ring the Receiving Party's doorbell or knock on the door to notify the Receiving Party the delivery has arrived (unless otherwise instructed by the Receiving Party). Whether providing a Delivery Service or a Return Service, you agree not to enter the customer's home or non-public areas of a business. The previous sentence does not apply to common or public areas including businesses lobbies or reception areas. If the Spark App prompts you to record proof of delivery, you agree to provide the proof of delivery as requested, including, for example, using the Spark App to take a picture of the items delivered with the delivery location in the photo, or obtaining customer signature or PIN code.

vi. <u>Customer Delivery Instructions, Notes and Preferences.</u> You agree to follow the Receiving Party's delivery instructions, notes, or preferences as indicated in the Spark App as long as their notes are reasonable, safe, and do not conflict with Applicable Laws, Service Level Standards, or these Terms of Use.

vii. <u>On-Time Delivery.</u> Delivery Services must be completed, to the address associated with the particular Delivery Service Offer, within the delivery timeframe noted in the Delivery Service Offer.

viii. <u>Delivery Completion.</u> You agree to complete a Delivery Service once selected unless the Delivery Service is cancelled prior to your arrival at pick-up. Completion Rate is the percentage of trips successfully delivered or returned after making a good faith attempt to deliver to the customer's location. If you select a Delivery Service Offer and then fail to travel to the store for pick-up, then your Delivery Service Offer may be revoked and offered to others. Completion Rate is part of MyMetrics. Your Completion Rate will be available to you in the MyMetrics tab of the Spark App and information on minimum percentages, if any, will be available to you at Sparkdriverapp.com.

ix. Passengers. You agree you will not accept a rideshare passenger while Services are being performed. You agree that during the performance of Services, you will not have as passengers a young child or children who should not be left unattended in the Vehicle. Passengers are prohibited from assisting with the Services or performing Services under their own Spark App account while a passenger in your vehicle. You are responsible for ensuring that any passengers you choose to bring with you do not disrupt your performance of the Services. Walmart may deactivate your Spark App account if your passengers create disruptions or engage in illegal activity while you are using the Spark App or performing Services.

x. Your Use of the Spark App: Your use of the Spark App is limited to you and only you. You agree to:

1. Log in to the Spark App yourself using your own username and password;
2. Physically log in to the Spark App yourself and not to use any bot or other form of technology to log in to the Spark App;
3. Safeguard your Spark App login username and password and not share, loan, lend, or otherwise make available, intentionally or unintentionally, your username and password with anyone else;
4. Comply if Walmart adds additional forms of account credentials or authentication factors. Should Walmart do so, you agree to additionally safeguard these credentials or authentication factors and not share them with anyone;
5. Report concerns of unauthorized use of your Spark App account within 24 hours of discovery by calling the Spark Driver Support hotline at 855-743-0457;
6. Allow no other person to log in to your Spark App account other than you;
7. Perform Service Offers yourself;
8. Not use or attempt to use anyone else's Spark App account; and
9. Not allow anyone else to perform Service Offers by posing as you.

xi. Identification Verification. You agree to show your unexpired, valid, driver's license issued by a state in the U.S., showing your name and your photo upon request by a Walmart associate or other retail associate, to verify your identity; paper licenses, pictures and/or digital copies, or photos of your license or other documents may be insufficient to meet this Service Level standard. We may require that you upload a clear, accurate photo of yourself to aid in identity verification.

xiii. Business Disruption. You agree you will not engage in any activity that results in a disruption to Walmart's operations or the operations of other businesses associated with the Services.

xiv. Shopping Services. You agree to follow the in-app guidelines for Shopping & Delivery Services, including steps necessary to pass check out audits. You agree not to falsely mark items as unavailable when the items were actually in stock and available while completing a shopping service. More information on Shopping & Delivery Service standards can be found at sparkdriverapp.com.

**E. Compliance.** You agree to utilize the Spark App in compliance with all Applicable Law and industry standards, and will reasonably cooperate with investigations relating to your failure to comply with these standards, without limitations:

i. Safeguarding Orders. You agree to safeguard orders at all times from damage, contamination, smoke, excessive heat, cold, or tampering.

ii. Regulated Merchandise Delivery. You agree to follow all Applicable Laws relating to the delivery of alcohol, prescriptions, and other regulated items, including confirming that the recipient is of proper age by checking recipient IDs and refusing to hand off a delivery containing alcohol to an intoxicated Receiving Party.

iii. Safeguarding Privacy and Reporting Violations. You agree you will not engage in any activity that would constitute an invasion of the Receiving Party's or other third party's privacy. You acknowledge that orders may contain highly sensitive customer information, including protected health information, that is protected by federal and state law. You acknowledge that loss, mishandling or misuse of such information, while in your possession, may constitute a criminal act. You will agree that you will not open, mishandle, alter, appropriate, access, or enable others to physically or visually access any customer information within any Order. You agree that you will notify Spark Driver Support immediately of any incident that may reasonably cause the loss of, or unauthorized access to, any customer information that is within your possession. You acknowledge that loss, mishandling or misuse of customer information, especially information related to protected health information, may result in harm to others. You expressly agree that you will not transcribe, record, or otherwise attempt to use any customer information received as part of an order except for the express limited purpose of completing Services on behalf of Receiving Parties.

iv. Criminal Acts. You agree you will not engage in any activity resulting in a criminal act in connection with the provision of Services through the Spark App, and understand your Spark App account may be suspended for investigation on suspicion of such activity, including, but not limited to:

1. Unwanted physical contact, including physical assault or injury;
2. Unwanted sexual contact, including sexual assault;
3. Theft or burglary;
4. Driving under the influence of drugs or alcohol;

5. Falsification of records; and
6. Intentional property damage.

v. Discrimination, Harassment, and Retaliation. You agree you will not engage in any activity constituting discrimination or harassment in connection with the provision of Services through the Spark App or other activities related to your use of the Spark App, including, but not limited to, contacting Receiving Parties for any purpose outside of the provision of Services through the Spark App or using profanity or threatening language with individuals you engage with in activities related to your use of the Spark App. You further agree to follow Spark App policies applicable to you regarding discrimination and harassment prevention. If you experience discrimination or harassment in the course of providing Services in connection with the Spark App, you can report your experience to www.WalmartEthics.com or by calling the Spark Driver Support hotline at 855-743-0457. Retaliation for reporting concerns is prohibited and may be reported through the same ethics and hotline methods previously identified.

vi. Local Ordinances. You agree to maintain compliance with local ordinances impacting the provision of Services, including local health orders.

vii. Posted Terms. You agree to comply with posted terms of any business establishment you enter in the course of providing Services with the Spark App.

viii. Firearms. You agree that you will not unlawfully carry a firearm and will not make visible to others any lawfully carried firearms while performing Services with the Spark App.

ix. Insurance, Accidents, and Claims. You agree to maintain at least the minimum coverage of automobile liability insurance required by state law in the state(s) in which you provide Services, for any Vehicle you utilize to perform the Services, and any other insurance coverages appropriate for the Services you provide. You must submit proof of such current insurance to us and must submit any updated proof of insurance information as it is updated or modified. You acknowledge that personal automobile insurance might not provide any coverage for commercial use of a personal vehicle, including during the delivery available period, if it applies, or the delivery service period. You agree to promptly notify your insurance carrier of any claims against you relating to your provision of the Services, and to notify us of any vehicle accidents, moving violations, injuries or property damage that occur while performing Services under these Terms of Use. You agree to cooperate with us in pursuing any coverage available under your insurance and to provide Walmart with information concerning the status of any claim upon our request. You acknowledge and agree that we may share your insurance information with a third party for the purpose of filing a claim if you fail to do so. We will make available to you occupational accident insurance through an appropriate insurance provider. To report an incident or for instructions on filing a claim for occupational accident insurance, you may call the Spark Driver Support hotline at 855-743-0457.

x. Hazardous Materials. You agree to follow Applicable Law in the handling and clean-up of any spills involving hazardous materials.

xi. Debarment. You agree and attest that you are not excluded or debarred from providing Services under any federal, state, or any other governmental programs. You agree to provide notice to us if you are ever in violation of this clause or otherwise learn that you are unable to provide Services for any reason, including but not limited to actions by the government.

xii. Maintaining Eligibility. We may suspend or deactivate your Spark App account if you fail to maintain your eligibility to provide Services using the Spark App. Eligibility requires you to:

1. Be age 18 or older;
2. Provide your true and accurate name, phone number, email address, mailing address, and Social Security number;
3. Be authorized to perform services as an independent contractor in the U.S.;
4. Have an unexpired, valid driver's license in you name issued by a state in the U.S. (paper or digital licenses may not be accepted);
5. Verify your identity electronically using a driver's license (as described above) and a selfie;
6. Have a mobile phone number with the U.S. country code +1 followed by ten digits;
7. Provide proof of valid auto insurance for the Vehicle you will use, which includes: your name, expiration date, and Vehicle information;
8. Have a clean and reliable Vehicle;
9. Have a mobile Device with camera and GPS capabilities meeting the Device requirements available in the FAQs at sparkdriverapp.com.; and
10. Have an active financial account for receipt of your Earnings, either through direct deposit or through an accepted financial technology company's digital wallet. Account approval and acceptance decisions will be made by the financial services providers contracted to serve the Spark Driver platform.

Background screening may be conducted, including motor vehicle records and criminal background checks; reviews will be conducted in accordance with applicable laws.

You are further required to keep up-to-date documentation on file with us, such as, but not limited to, a copy of your valid driver's license issued by a state in the U.S, proof of insurance, Vehicle information, and correct active account information for receipt of Earnings. If at any time you fail to meet maintaining eligibility requirements, or your criminal history or motor vehicle or moving violation record changes, rendering you ineligible to use the Spark App, we may temporarily suspend or deactivate your Spark App account. Additionally, we may periodically deploy a facial recognition tool, in accordance with the Spark App privacy statement and Applicable Law, for purposes of validating your identity in relation to the photo on your driver's license issued by a state in the U.S to ensure your account is being used by the vetted and eligible individual. Failure to pass periodic identity verification may result in Spark App account suspension or deactivation.

If we become aware of any illegal or unprofessional activity by you in your activities providing Delivery Services of Walmart orders on other platforms Walmart engages for Delivery Services, we may determine you are ineligible to provide Services through the Spark App and suspend or revoke your Spark App account.

**F. Your Relationship with Receiving Parties.** You acknowledge and agree that you are responsible for taking such precautions as may be reasonable and proper in connection with your interaction with Receiving Parties that arise from your provision of Delivery Services, Permissive Services, or use of the Spark App. We are not responsible or liable for the actions or inactions of a Receiving Party in relation to you while conducting Delivery Services or Permissive Services.

**G. Devices and Supplies.** You are responsible for the acquisition, cost, and maintenance of your Devices as well as any necessary wireless data plan or other supplies. With respect to the Spark App, we will make available the Spark App for installation on the Device. You agree that: (i) use of the Spark App on your Device requires an active data plan with a wireless carrier associated with your Device, which data plan will be provided by you at your own expense; and (ii) use of the Spark App on your Device as an interface may consume very large amounts of data through the data plan. **WALMART ADVISES THAT YOUR DEVICE ONLY BE USED UNDER A DATA PLAN WITH UNLIMITED OR VERY HIGH DATA USAGE LIMITS, AND WALMART SHALL NOT BE RESPONSIBLE OR LIABLE FOR ANY FEES, COSTS, OR OVERAGE CHARGES ASSOCIATED WITH ANY DATA PLAN.**

**H. Location Based Services.** You acknowledge and agree that your geolocation information must be provided to the Spark App via the Device in order to provide Delivery Services or Permissive Services. You acknowledge and agree that: (a) your geolocation information may be obtained by the Spark App while it is running; and (b) we are not responsible for the accuracy of your geolocation information. In addition, we may monitor, track and share with third parties your geolocation information obtained by the Spark App and the Device for operational, safety, security, and marketing based purposes related to the Spark App, Delivery Services, and Permissive Services.

**I. Account Information; Prohibitions.** You certify that any Content you provide on or through the Spark App is accurate and that the information you provide on or through the Spark App is complete. You are solely responsible for maintaining the confidentiality and security of your account including username and password. We are not responsible for any losses arising out of the unauthorized use of your account. You agree that we do not have any responsibility if your Device is lost or access to your Device is shared with others, and we may deactivate your account if those events occur. Your account may be suspended, restricted or terminated for violating these Terms of Use or failure to meet any associated Service Level Standards. Except as otherwise provided by law, at any time without notice to you, we may (1) change, restrict access to, suspend, or discontinue the Spark App, and (2) charge, modify, or waive any fees required to use any services, functionality, or other content available through the Spark App.

In connection with the Spark App, you will not:

i. Make available any Content through or in connection with the Spark App that is or may be in violation of the content guidelines set forth in these Terms of Use.

ii. Make available through or in connection with the Spark App any virus, worm, Trojan horse, Easter egg, time bomb, spyware, or other computer code, file or program that is or is potentially harmful or invasive or intended to damage or hijack the operation of, or to monitor the use of, any hardware, software, or equipment. This includes but is not limited to the use of jail-broken or rooted mobile devices.

iii. Use the Spark App fraudulently or for any purpose that is fraudulent or otherwise tortious or unlawful, including, but not limited to, sharing accounts; using another person's account; activating multiple accounts; excessive use of multiple devices; fraudulently manipulating the Spark App to appear to perform Delivery Services; attempting to manipulate Customer Rating metrics or Earnings by performing Services for yourself, your household, or others cooperating with you in these fraudulent attempts; using the Spark App to engage in any type of theft or attempted theft; entering false information into the Spark App, such as logging a check-in time before arriving at the pick-up location, marking a Delivery Service order delivered before you have delivered it to the Receiving Party, requesting Spark Driver Support agents to mark Service Offers

as delivered and/or returned without making a good faith effort at completing the service, or positioning your Device in a location to project a particular geolocation when you are not available to receive Service Offers at the same location as your Device.

iv. Harvest or collect information about users of the Walmart Sites.

v. Interfere with or disrupt the operation of the Spark App or the systems, servers, or networks used to make the Spark App available, including by hacking or defacing any portion of the Spark App; or violate any requirement, procedure or policy of such servers or networks.

vi. Restrict or inhibit any other person from using the Spark App.

vii. Reproduce, modify, adapt, translate, create derivative works of, sell, rent, lease, loan, timeshare, distribute, or otherwise exploit any portion of (or any use of) the Spark App except as expressly authorized in these Terms of Use, without Walmart's express prior written consent.

viii. Reverse engineer, decompile, or disassemble any portion of the Spark App, except where such restriction is expressly prohibited by Applicable Law.

ix. Remove any copyright, trademark, or other proprietary rights notice from the Spark App.

x. Frame or mirror any portion of the Spark App, or otherwise incorporate any portion of the Spark App into any product or service, unless you obtain Walmart's express prior written consent to do so.

xi. Systematically download and store any Walmart Data.

xii. Use any robot, bot, spider, site search/retrieval application or other manual or automatic device to send, intercept, retrieve, index, "scrape," "data mine" or otherwise gather any Walmart Data, or reproduce or circumvent the navigational structure or presentation of the Spark App, or to mask geolocation, or manipulate the intended functionality of the Spark App without Walmart's express prior written consent.

xiii. Use a virtual private network (VPN) or otherwise intentionally or unintentionally impair or inhibit the Spark App's ability to accurately determine your geolocation without Walmart's express prior written consent.

xiv. Cause injury to any person or entity and/or harass or discriminate against any person or entity.

xv. Violate any law, rule, or regulation, or these Terms of Use.

xvi. You will not use the Spark App or Walmart's name, logo, or brand to:

1. send any unsolicited or unauthorized Content, including advertising, promotional materials, email, junk mail, spam, or other form of solicitation; or
2. use any meta tags or other hidden text or metadata utilizing a Walmart trademark, logo, URL, or product name without Walmart's written consent.

xvii. Attempt to do anything, or permit, encourage, assist, or allow any third party to do anything, prohibited in this Section, or attempt, permit, encourage, assist, or allow any other violation of these Terms of Use.

xviii. Submit misleading, false, and/or fraudulent information, including driver's licenses, health care cards or proof of health care coverage where applicable, or insurance cards.

**J. Earnings and Value of Services.** Service Offers will note the Earnings amount offered in consideration for completion of Service Offers. Service Offers will show base Earnings, and may also display any applicable incentives, and tips pre-authorized by customers. Earnings are based on a per Service Offer basis; Earnings are not based on an hourly or salaried basis, except where required by law. Unless otherwise stated in the Service Offer or other communication relating to that Service Offer, all Earnings remitted for Services completed, including tips, and any remittances associated with an incentive or referral program, will be transferred to your account with the Earning provider you selected and were approved by the payment provider to use from the list of those authorized to facilitate Earnings for the Spark App. Earnings remittances will be made in accordance with any Applicable Law in the area where you provide Services, such as California's Protect App-Based Drivers and Services Act. Earnings will be remitted at least as frequently as weekly. It is your responsibility to maintain an account in good standing with one of the authorized payment tool providers in order to maintain Spark App account eligibility and continue to generate and receive Earnings on the Spark App. More detail on Earnings can be found at sparkdriverapp.com.

## 3. Proprietary Rights

**A. License Grant.** Subject to the terms and conditions of these Terms of Use, Walmart hereby grants you a non-exclusive, non-transferable, non-sublicensable, non-assignable license, during the term of these Terms of Use, to use the Spark App on Devices solely for the purpose of providing Services to Receiving Parties. All rights not expressly granted to you are reserved by Walmart and their respective licensors. The foregoing license grant shall immediately terminate, and you will delete and fully remove the Spark App from the Devices in the event that you cease to provide Services.

**B. Ownership.** The Spark App and all Walmart Data, including all intellectual property rights therein, are and shall remain the property of Walmart or their respective licensors. Neither these Terms of Use nor your use of the Spark App or Walmart Data conveys or grants to you any rights in or related to the Spark App or Walmart Data, except for the limited license granted above.

Other than as specifically permitted by Walmart in connection with the Spark App, you are not permitted to use or reference in any manner Walmart's or their respective licensors' company names, logos, products and service names, trademarks, service marks, trade dress, copyrights or other indicia of ownership, alone and in combination with other letters, punctuation, words, symbols and/or designs (the "Walmart Marks and Names") for any commercial purposes. You agree that you will not try to register or otherwise use and/or claim ownership in any of the Walmart Marks and Names, alone or in combination with other letters, punctuation, words, symbols and/or designs, or in any confusingly similar mark, name or title, for any goods and services.

**C.** **Walmart's Rights to Use Content and Idea.** You grant to Walmart a royalty-free, perpetual, irrevocable, worldwide, unlimited, nonexclusive license to use, reproduce, create derivative works from, modify, publish, edit, translate, distribute, perform and display (publicly or otherwise) any Content that you make available, in any media or medium, and in any form, format, or forum now known or hereafter developed. You further agree that Walmart is free to use any ideas for any purpose. Walmart may sublicense its rights in Content and ideas through multiple tiers of sublicenses. Walmart is, and will be, under no obligation (1) to maintain any Content or idea in confidence; (2) to pay any compensation for any Content or idea; or (3) to respond to any Content or idea. You grant to Walmart the right to use any name associated with any Content or idea that you make available to Walmart, although Walmart has no obligation to exercise such right, or to otherwise provide any attribution for any Content or idea.

**D.** **Prohibited Content.** You agree that you will not make available Content in connection with the Spark App that:

i. is false, fraudulent, inaccurate, or misleading;
ii. contains your full name(s), or any other confidential personally identifiable information of yourself or others;
iii. violates any local, state, federal, or international laws or is otherwise tortious;
iv. is protected by or would infringe on the rights of others (including Walmart), including any patent, copyright, trademark, trade secret, right of publicity or privacy, or any other proprietary right, without the express prior written consent of the applicable owner;
v. is obscene, indecent, pornographic, or otherwise objectionable;
vi. is derogatory, defamatory, threatening, harassing, abusive, slanderous, hateful, or embarrassing to any other person or entity as determined by Walmart in its sole discretion;
vii. victimizes, harasses, degrades, or intimidates an individual or group of individuals on the basis of religion, gender, sexual orientation, race, ethnicity, age or disability;
viii. is violent or threatening, or promotes violence against, or actions that are threatening to, any individual or group;
ix. contains advertisements, solicitations, or spam links to other web sites or individuals, without prior written permission from Walmart;
x. contains or relates to chain letters or pyramid schemes;
xi. impersonates another business, person, or entity, including Walmart, its related entities, employees, and agents;
xii. violates any policy posted on the Spark App; or
xiii. is intended to cause harm, damage, disable, or otherwise interfere with the Spark App or our partners.

**4.** **Confidentiality**

**A.** You acknowledge and agree that when using the Spark App, you may have direct or indirect access or exposure to Walmart's confidential information ("Confidential Information"). Confidential Information includes, but is not limited to:

i. information, processes, designs and data concerning Walmart's business, including but not limited to Walmart Data;
ii. information, processes, designs and data concerning the businesses offering Permissive Service Offers;
iii. customer names, addresses and contact persons;
iv. rates, rating methods and billing practices;
v. delivery provider information;
vi. the names, addresses and information pertaining to Walmart employees or other contractors serving Walmart; and
vii. methods, formulae, transaction volume, marketing and business plans, and such other nonpublic information (whether disclosed in writing or verbally) that Walmart designates as being proprietary or confidential or that you should reasonably know to treat as confidential.

**B.** You acknowledge and agree that:
i. all Confidential Information shall remain the exclusive property of Walmart;
ii. you will not use Confidential Information for any purpose except in furtherance of your use of the Spark App and authorized provision of the Services;
iii. you will not disclose Confidential Information to any third party; and

iv. you will not store or keep Confidential Information and will return or destroy (with confirmation of destruction) all Confidential Information upon the termination of your authorized use of the Spark App or at the request of Walmart.

**C.** Notwithstanding the foregoing, Confidential Information does not include any information to the extent it:

i. is or becomes part of the public domain through no action or omission by you;
ii. was possessed by you prior to your use of the Spark App without an obligation of confidentiality; or
iii. is disclosed to you by a third party having no obligation of confidentiality with respect thereto.

**5. App Use and Content Monitoring**

Walmart will have the right (but not the obligation), in our sole discretion, to monitor, evaluate, and analyze Content, and any use of and access to the Spark App, including to determine compliance with these Terms of Use and any other operating rules that may be established by Walmart from time to time. Walmart will also have the right (but not the obligation), in our sole discretion, to edit, move, delete, or refuse to make available any Content made available through, the Spark App, for any reason, including violation of these Terms of Use, whether for legal or other reasons. Despite this right of ours, you are solely responsible for any Content you make available, and you agree to indemnify Walmart for all claims resulting from any Content you make available.

**6. Privacy**

You acknowledge that any personal information that you provide through the Spark App will be used by Walmart in accordance with Walmart's Spark Driver App Privacy Statement which may be updated from time to time and is available in the Spark App.

You further acknowledge that any personal information that you provide through the Spark App for Permissive Services will be used by non-Walmart owned and managed providers, in accordance with the terms of the privacy policies and terms of use published by such providers, for purposes of facilitating the Permissive Services as well as other purposes that may be specified in the policies and terms of use of such providers.

**7. Representations and Warranties**

**A.** You hereby represent and warrant that:

i. you have full power and authority to enter into these Terms of Use and perform your obligations hereunder;
ii. you are authorized to accept work as an independent contractor in the U.S.;
iii. you have not entered into, and during the term will not enter into, any agreement that would prevent you from complying with these Terms of Use; and
iv. you will comply with all Applicable Laws in your performance of these Terms of Use, including holding and complying with all permits, licenses, registrations and other governmental authorizations necessary to provide Delivery Services, Permissive Services, or otherwise use the Spark App.

**B.** It is solely your responsibility to comply in all respects with all Applicable Law to all aspects of the Services, and use of Spark App. Neither Walmart nor any of its affiliates are responsible for verifying or instructing you with respect to Applicable Law and will not provide legal advice in connection with Applicable Law or these Terms of Use.

**C.** Walmart reserves the right to deactivate your account or restrict you from accessing the Spark App in Walmart's sole and absolute discretion. The Spark App may be subject to limitations, delays, and other problems inherent in the use of the Internet and electronic communications. Walmart is not responsible for any delays, delivery failures, or other economic damage resulting from such problems.

**8. Indemnification and Disclaimer of Warranties**

**A.** **Indemnification.** You shall indemnify, defend (at Walmart's option) and hold harmless Walmart and its Affiliates and their respective officers, directors, employees, agents, successors and assigns from and against any and all liabilities, expenses (including legal fees), damages, penalties, fines, social security contributions and taxes arising out of or related to: (a) your breach of your representations, warranties or obligations under these Terms of Use; or (b) a claim by a third party (including Receiving Parties, regulators and governmental authorities) directly or indirectly related to your provision of Delivery Services, the Permissive Services, or use of the Spark App.

**B.** **Disclaimer of Warranties.** THE SPARK APP, AND ALL WALMART DATA, PRODUCTS, SERVICES, FUNCTIONALITY, AND OTHER ITEMS INCLUDED ON OR OTHERWISE MADE AVAILABLE TO YOU THROUGH THE SPARK APP, ARE PROVIDED BY WALMART ON AN "AS IS" AND "AS AVAILABLE" BASIS. NO WALMART ENTITY MAKES ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND,

EXPRESS OR IMPLIED, AS TO THE OPERATION OF THE SPARK APP OR THE WALMART DATA, PRODUCTS, SERVICES, FUNCTIONALITY, OR OTHER ITEMS INCLUDED ON OR OTHERWISE MADE AVAILABLE TO YOU THROUGH THE SPARK APP. TO THE FULLEST EXTENT PERMISSIBLE BY APPLICABLE LAW, THE WALMART ENTITIES DISCLAIM ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. WITHOUT LIMITING THE FOREGOING, THE WALMART ENTITIES DISCLAIM ANY AND ALL WARRANTIES, EXPRESS OR IMPLIED, FOR ANY USE OF THE SPARK APP. YOU ACKNOWLEDGE THAT, TO THE FULLEST EXTENT PROVIDED BY APPLICABLE LAW, YOUR USE OF THE SPARK APP IS AT YOUR SOLE RISK. THIS DISCLAIMER CONSTITUTES AN ESSENTIAL PART OF THESE TERMS OF USE. TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, YOU ASSUME FULL RESPONSIBILITY FOR YOUR USE OF THE SPARK APP AND AGREE THAT ANY INFORMATION YOU SEND OR RECEIVE DURING YOUR USE OF THE SPARK APP MAY NOT BE SECURE AND MAY BE INTERCEPTED OR OTHERWISE ACCESSED BY UNAUTHORIZED PARTIES. YOU AGREE THAT, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, NO WALMART ENTITY IS RESPONSIBLE FOR ANY LOSS OR DAMAGE TO YOUR PROPERTY OR DATA THAT RESULTS FROM YOUR ACCESS OR DOWNLOAD FROM THE SPARK APP. SOME STATES DO NOT ALLOW LIMITATIONS ON HOW LONG AN IMPLIED WARRANTY LASTS, SO THE FOREGOING LIMITATIONS MAY NOT APPLY TO YOU.

**9. Limitation of Liability**

YOU ACKNOWLEDGE AND AGREE THAT, TO THE FULLEST EXTENT PROVIDED BY APPLICABLE LAW, WALMART WILL NOT BE LIABLE TO YOU OR TO ANY OTHER PERSON UNDER ANY CIRCUMSTANCES OR UNDER ANY LEGAL OR EQUITABLE THEORY, WHETHER IN TORT, CONTRACT, STRICT LIABILITY, OR OTHERWISE, FOR ANY INDIRECT, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL LOSSES OR DAMAGES OF ANY NATURE ARISING OUT OF OR IN CONNECTION WITH THE USE OF OR INABILITY TO USE THE SPARK APP, EVEN IF AN AUTHORIZED REPRESENTATIVE OF A WALMART ENTITY HAS BEEN ADVISED OF OR SHOULD HAVE KNOWN OF THE POSSIBILITY OF SUCH DAMAGES. TO THE FULLEST EXTENT PROVIDED BY APPLICABLE LAW, THIS DISCLAIMER APPLIES TO ANY DAMAGES OR INJURY ARISING FROM ANY FAILURE OF PERFORMANCE, ERROR, OMISSION, INTERRUPTION, DELETION, DEFECTS, DELAY IN OPERATION OR TRANSMISSION, LOST PROFITS, LOSS OF GOODWILL, LOSS OF DATA, WORK STOPPAGE, ACCURACY OF RESULTS, COMPUTER FAILURE OR MALFUNCTION, COMPUTER VIRUSES, FILE CORRUPTION, COMMUNICATION FAILURE, NETWORK OR SYSTEM OUTAGE, THEFT, DESTRUCTION, UNAUTHORIZED ACCESS TO, ALTERATION OF, LOSS OF USE OF ANY RECORD OR DATA, AND ANY OTHER TANGIBLE OR INTANGIBLE LOSS.

YOU SPECIFICALLY ACKNOWLEDGE AND AGREE THAT, TO THE FULLEST EXTENT PROVIDED BY APPLICABLE LAW, NO WALMART ENTITY WILL BE LIABLE FOR ANY DEFAMATORY, OFFENSIVE, OR ILLEGAL CONDUCT OF ANY RECEIVING PARTY, OR OTHER USER OF THE SPARK APP.

**10. Term and Termination**

The initial term of these Terms of Use is thirty (30) days and will automatically renew on a month-to-month basis thereafter. Access to the Spark App and program, as governed by these Terms of Use, shall continue unless and until terminated by either you or Walmart. You may terminate these Terms of Use at any time, provided that you discontinue any further use of the Spark App and provision of Services. Walmart also may terminate these Terms of Use at any time and may do so immediately without notice. Walmart also may deny or suspend your access to the Spark App for violating these Terms of Use or failure to meet any associated Service Level Standards, subject to the account deactivation appeals process. Walmart may terminate these Terms of Use by deactivating your Spark App account if your Spark App account is inactive for prolonged periods of time or if Walmart decides to no longer offer the Spark App and program. Upon any termination of these Terms of Use by either you or Walmart, you must promptly destroy all Walmart Data and other Content downloaded or otherwise obtained from the Spark App, as well as all copies of such Walmart Data, whether made under these Terms of Use or otherwise. The following sections will survive any termination of these Terms of Use: "Confidentiality," "Proprietary Rights," "App Use and Content Monitoring," "Privacy," "Indemnification," "Termination," "Disclaimer of Warranties," "Limitation of Liability," "Class and Representative Action Waivers," and "General."

**11. Relationship of the Parties**

**A. You and Walmart expressly agree that: (a) these Terms are not an employment agreement, nor do they create an employment relationship, between Walmart and you; and (b) no joint venture, partnership, or agency relationship exists between Walmart and you.**

**B.** You have no authority to bind Walmart and you undertake not to hold yourself out as an employee, agent or authorized representative of Walmart. Where, by implication of mandatory law or otherwise, you may be deemed an agent or representative of Walmart, you undertake and agree to indemnify, defend (at Walmart's option) and hold Walmart harmless from and against any claims by any person or entity based on such implied agency or representative relationship.

**C.** The Parties acknowledge that they enter into these Terms of Use as two independent business enterprises and that nothing in these Terms of Use or any other agreement (including any agreement between another entity and you regarding you performing delivery services to Walmart customers) shall be construed as making either party the partner, joint venturer, agent, employer, or employee of the other. Unless authorized in writing by the party to be bound, neither party shall have the authority to make any statements, representations, or commitments of any kind, or to take any action which shall be binding on the other. You understand and expressly acknowledge that: (1) you are an independent contractor and you are not Walmart's employee for any purpose; (2) you are not eligible for either workers compensation coverage or payments or UNEMPLOYMENT PAYMENTS which are reserved for employees unless unemployment coverage is provided by you or some entity other than Walmart; (3) you are obligated to pay all FEDERAL AND STATE INCOME TAXES, if any, on any monies earned pursuant to the contractual relationship, and Walmart will not make any tax withholdings on your behalf; (4) Walmart shall have no responsibility for the wages, benefits or expenses due your employees, agents, or subcontractors nor for income tax withholding, social security, unemployment, or other payroll taxes of your employees, agents, or subcontractors; (5) Walmart provides no training for how to provide Services, except where required by law; and (6) neither you nor your employees, agents, or subcontractors shall receive or have any right to receive any wages, including vacation pay or holiday pay, from Walmart; nor shall they participate or have any right to participate in other Walmart benefits, if any, available to Walmart's employees, agents, or subcontractors (even if you or any of your employees, agents or subcontractors are found to be employees of Walmart by an arbitrator, court or agency of competent jurisdiction).

**D.** **You understand and expressly acknowledge that as an independent contractor using the Spark App:** (1) you receive specific Offers in the Spark App to provide Services, such as Delivery and Shopping Services, that include details of the specific Services to be provided and the amount Walmart agrees to pay for completing the particular Service; (2) there is no set schedule or minimum required activity on the Spark App, and you have the option to select the Services you would like to complete and are free to determine the days and times you would like to be active on the Spark App; (3) you are not subject to a non-compete policy or agreement and are free to perform services for other, non-Walmart owned businesses or entities or for your own business or entity; (4) while you must meet service level standards of the Services you provide on the Spark App, you are in control of the methods and processes you use to complete the Services, drawing upon your own independent knowledge and experience; and (5) you are responsible for obtaining and paying for any registrations, licenses, or other authorizations required by Applicable Law, as well as equipment and materials necessary for you to perform the Services.

**E.** **Non-Exclusive and No Guaranteed Business.** You and Walmart expressly agree that the relationship between the parties is not exclusive, and the parties may provide or receive services with other companies or individuals. Furthermore, these Terms of Use do not guarantee any level of volume of business.

## 12. CLASS AND REPRESENTATIVE ACTION WAIVERS

ANY DISPUTE BETWEEN YOU AND WALMART SHALL BE ADJUDICATED SOLELY ON AN INDIVIDUAL BASIS, AND YOU AND WALMART EACH WAIVE THE RIGHT TO PARTICIPATE IN A CLASS, COLLECTIVE, PRIVATE ATTORNEY GENERAL ACTION, OR OTHER JOINT ACTION WITH RESPECT TO SUCH DISPUTE.

## 13. General

**A.** These Terms of Use, your Non-Disclosure and Dispute Resolution Agreement with Walmart, and any other consents provided during the sign-up process or while using the Spark App represent the complete agreement and understanding between you and Walmart with regard to use of the Spark App and your provision of Services and supersedes all prior agreements and representations with respect to the subject matter of these Terms of Use.

**B.** These Terms of Use do not, and shall not be construed to, create any partnership, joint venture, employer-employee, agency, or franchisor-franchisee relationship between you and Walmart.

**C.** The interpretation of these Terms of Use shall be governed by Arkansas law, without regard to the choice or conflicts of law provisions of any jurisdiction. However, this choice of law provision is not intended to create any other substantive right to non-Arkansas citizens to assert claims under Arkansas law whether that be by statute, common law, or otherwise. This choice of law provision is intended only to specify the use of Arkansas law to interpret these Terms of Use, and this provision shall not be interpreted as generally extending Arkansas law to you if you do not otherwise reside or provide Services contemplated by these Terms of Use in Arkansas. The law in states and/or jurisdictions in which you perform Services contemplated by these Terms of Use shall apply to all disputes, claims, or causes of action alleging violation of law. Walmart's failure to enforce any right or provision in these Terms of Use shall not constitute a waiver of such right or provision unless acknowledged and agreed to by Walmart in writing.

**D.** Headings in these Terms of Use are for reference purposes only and in no way define or limit the scope of the section.

**E.** If any provision of these Terms of Use is held to be unenforceable for any reason, such provision will be reformed only to the extent necessary to make it enforceable and the other terms of these Terms of Use will remain in full force and effect.

**F.** The failure of Walmart to act with respect to a breach of these Terms of Use by you or others does not constitute a waiver and will not limit Walmart's rights with respect to such breach or any subsequent breaches.

**G.** You may not assign, transfer, or sublicense any or all of your rights or obligations under these Terms of Use without our express prior written consent. Walmart may assign, transfer, or sublicense any or all of our rights or obligations under these Terms of Use without restriction.

**H.** Where Walmart requires that you provide an e-mail address, you are responsible for providing Walmart with your most current e-mail address. In the event that the last e-mail address you provided to Walmart is not valid, or for any reason is not capable of delivering to you any notices required or permitted by these Terms of Use, Walmart's dispatch of the e-mail containing such notice will nonetheless constitute effective notice.

**I.** For contractual and operational purposes, you (1) consent to receive communications from Walmart in an electronic form; and (2) agree that all terms and conditions, agreements, notices, disclosures, and other communications that Walmart provides to you electronically satisfy any legal requirement that such communications would satisfy if they were in writing. This subparagraph does not affect your statutory rights.

**J.** Any use of the term "including" or variations thereof in these Terms of Use shall be construed as if followed by the phrase "without limitation." Notices to you (including notices of changes to these Terms of Use) may be made via posting to the Spark App or by e-mail (including in each case via links), or by regular mail.

**K.** Without limitation, a printed version of these Terms of Use and of any notice given in electronic form shall be admissible in judicial or administrative proceedings based upon or relating to these Terms of Use to the same extent and subject to the same conditions as other business documents and records originally generated and maintained in printed form.

**L.** Walmart shall not be a party to any Permissive Services that you elect to engage in within the Spark App. Walmart makes no representation or warranty related to such Permissive Services offers. You elect to engage in such Permissive Services at your own risk.

**M.** If any part of these Terms of Use is deemed unlawful or unenforceable, it shall be construed to conform with law or severed from these Terms of Use such that the remainder of these Terms of Use shall remain enforceable to the fullest extent permitted by law.

**14. Notice Regarding Apple**

In addition to your agreement with these Terms of Use, the following provisions apply with respect to your use of any version of the Spark App compatible with the iOS operating system of Apple Inc. ("Apple"):

**A.** Apple is not a party to these Terms of Use and does not own and is not responsible for the Spark App. Apple is not providing any warranty for the Spark App except, if applicable, to refund the purchase price for it. Apple is not responsible for maintenance or other support services for the Spark App and will not be responsible for any other claims, losses, liabilities, damages, costs, or expenses with respect to the Spark App, including any third-party product liability claims, claims that the Spark App fails to conform to any applicable legal or regulatory requirement, claims arising under consumer protection or similar legislation, and claims with respect to intellectual property infringement. Any inquiries or complaints relating to the use of the Spark App, including those pertaining to intellectual property rights, must be directed to Walmart in accordance with the "Help" section.

**B.** The license you have been granted in these Terms of Use is limited to a non-transferable license to use the Spark App on an Apple-branded product that runs Apple's iOS operating system and is owned or controlled by you, or as otherwise permitted by the Usage Rules set forth in Apple's App Store Terms of Service. In addition, you must comply with the terms of any third-party agreement applicable to you when using the Spark App, such as your wireless data service agreement.

**C.** You represent and warrant that (1) you are not located in a country that is subject to a U.S. Government embargo, or that has been designated by the U.S. Government as a "terrorist supporting" country; and (2) you are not listed on any U.S. Government list of prohibited or restricted parties.

**D.** Apple and Apple's subsidiaries are third-party beneficiaries of these Terms of Use and, upon your acceptance of the terms and conditions of these Terms of Use, will have the right (and will be deemed to have accepted the right) to enforce these Terms of Use against you as a third-party beneficiary thereof; notwithstanding the foregoing, Walmart's right to enter into, rescind or terminate any variation, waiver, or settlement under these Terms of Use is not subject to the consent of any third party.